ESTATE OF CHARLES P. BLAY, DECEASED, WINIFRED I. BLAY, ADMINISTRATRIX, AND WINIFRED I. BLAY, ET AL., [1] v. COMMISSIONER OF INTERNAL REVENUE, Respondent Estate of Blay v. Commissioner
Docket Nos. 17811-80, 17812-80, 17813-80, 17814-80, 17818-80, 17820-80, 17821-80, 17823-80, 21229-80, 21230-80, 12537-81, 12538-81, 12539-81, 12540-81, 14401-81, 15270-81, 15272-81, 15837-81.
United States Tax Court
T.C. Memo 1984-565; 1984 Tax Ct. Memo LEXIS 105; 48 T.C.M. (CCH) 1463; T.C.M. (RIA) 84565; October 23, 1984. *105 Petitioners filed a motion for partial summary judgment requesting the Court to hold that certain lump-sum amounts "paid" by them in the form of cash and nonrecourse promissory notes constituted "advanced minimum royalties." Held, in view of our decision in Maddrix v. Commissioner, 83 T.C.     (1984), petitioners' motion denied. Elliot I. Miller, for the petitioners. Theodore J. Kletnick, for the respondent. STERRETT MEMORANDUM OPINION STERRETT, *106 Judge: These consolidated cases are before the Court on petitioners' motion for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[2] The issue raised by the motion is whether certain lump-sum amounts paid [3] by petitioners in the form of cash and nonrecourse promissory notes constitute "advanced minimum royalties" within the contemplation of section 1.612-3(b)(3), Income Tax Regs. Respondent determined the following deficiencies in petitioners' Federal income taxes: Docket
No.
Petitioner
Year
Deficiency
17811-80
Estate of Charles P. Blay,
1977
$12,630.00
Deceased, Winifred I. Blay,
1978
683.00
Administratrix, and Winifred
I. Blay
17812-80
John A. Bolt and
1977
12,473.00
Edna Bolt
1978
576.00
17813-80
Roger O. Bouchard and
1977
30,775.00
Jerry Ann Bouchard
1978
1,315.00
17814-80
Amos E. Duinick and
1977
14,059.00
June E. Duinick
1978
649.00
17818-80
Robert L. Pickett, Jr. and
1977
13,335.00
Virginia K. Pickett
1978
1,804.00
17820-80
Albert L. Stephens, Jr.
1977
13,286.00
1978
712.00
17821-80
Ophelia G. Walsingham
1977
10,451.00
17823-80
Gerald J. Yegge and
1977
10,651.00
Tina G. Yegge
1978
2,342.00
21229-80
Charles J. Graham and
1977
14,724.00
Helen G. Graham
1978
520.00
21230-80
Merlin H. Willey and
1977
4,512.00
Edith H. Willey
1978
4,816.00
12537-81
Robert H. Tuck and
1977
14,097.66
Phyllis B. Tuck
12538-81
John P. Hamilton and
1977
14,853.71
Phyllis A. Hamilton
12539-81
Thomas V. Cooper and
1977
37,626.15
Constance S. Cooper
12540-81
Robert Davis and
1977
36,251.66
Faye Davis
14401-81
Jon D. Hakman and
1977
10,290.00
Pamela Hakman
1978
884.00
15270-81
Thomas C. Barnes
1977
$27,462.00
15272-81
Thomas C. Barnes and
1978
1,083.00
Cindi S. Barnes
15837-81
M. Khaled El-Yousef and
1976
48,300.00
Nadia El-Yousef
1977
31,903.18
*107 The petitioners in docket Nos. 12537-81, 12538-81, 12539-81, and 12540-81 resided in Virginia at the time they filed their petitions herein. The petitioners in docket Nos. 14401-81, 15270-81, and 15272-81 resided in California at the time they filed their petitions herein. The petitioners in the remaining docket numbers resided in Florida at the time they filed their petitions herein. Petitioners filed their Federal income tax returns for the years in question with the appropriate Office of the Internal Revenue Service. Petitioners are owners of undivided working interests in mineral programs known as Investors Mining Program 77-2 and Investors Mining Program 77-3. [4] During the years in question, petitioners claimed deductions for royalties, interest, and various miscellaneous fees attributable to their participation in the investment programs.[5] In their motion to this Court,petitioners have asked us to hold that, as a matter of law, the advanced royalties constituted "advanced minimum royalties" within the contemplation of section 1.612-3(b)(3), Income Tax Regs., and that petitioners are entitled to deduct those "advanced minimum royalties" in the year *108 that they made cash payments and executed nonrecourse promissory notes with respect thereto. After petitioners filed their motion in this case, we decided a related case, Maddrix v. Commissioner, 83 T.C.     (1984), which was pending at the time petitioners filed their motion herein. The petitioner in Maddrix was the owner of an interest in Investors Mining Program 77-2. Petitioners herein have represented that the same relevant operative facts apply equally to Investors Mining Program 77-2 and *109 Investors Mining Program 77-3. Since petitioners have made the foregoing representation and since the relevant facts relating to Investors Mining Program 77-2 are discussed in considerable detail in the Maddrix case, we will herein merely summarize the general manner in which the programs operated, without necessarily differentiating between Investors Mining Program 77-2 and Investors Mining Program 77-3. The programs were purportedly organized as partnerships. However, they filed elections under section 761(a)(2), I.R.C. 1954, to be excluded from the application of the Subchapter K partnership provisions. In 1977 the programs entered into coal subleases with Olentangy Resources, Inc. (Olentangy), which provided the programs with various rights to mine the coal reserves on the properties subject to the leases. The properties consisted of acreage located in Logan County, West Virginia. The subleases between Olentangy and the programs ran for a term of 10 years or until the coal reserves were exhausted. Pursuant to the terms of the sublease agreements, the co-owners of each of the programs, as sublessees, agreed to pay Olentangy, as sublessor, an "annual minimum *110 royalty" of $300,000 to be paid on December 1 of each lease year. The agreements further provided, however, that upon commencement of each sublease, the co-owners of each program were to pay Olentangy $2,540,000 of the "annual minimum royalty," of which $590,000 was to be paid in cash and $1,950,000 was to be represented by the execution and delivery to Olentangy of nonrecourse promissory notes. Upon execution of the subleases, each of petitioners allegedly contributed cash and executed a nonrecourse note payable to Olentangy as his proportionate share of the "advance minimum royalty." All noties bore interest at the rate of 6 percent per annum. The notes executed by petitioners who owned interests in Investors Mining Program 77-2 were payable quarterly, and any unpaid principal or interest was fully due and payable on June 30, 1985 or the earlier termination of the borrower's undivided interest in the sublease. The notes executed by petitioners who owned interest in Investors Mining Program 77-3 were payable semi-annually, and any unpaid principal or interest was fully due and payable on December 31, 1987 or the earlier termination of the borrower's interest in the sublease. *111 The notes were secured solely by petitioners' interests in the subleases, it being specifically agreed that petitioners were not personally liable for any amounts payable under the notes. Simultaneously with the execution of the subleases, the programs entered into mining services contracts with Big Sandy Creek Mining Co., Inc. (Big Sandy Creek), an affiliate of Olentangy. Both Big Sandy Creek and Olentangy were owned by by the same four individuals, one of whom served as Olentangy's president. Under the provisions of the mining services contracts, Big Sandy Creek agreed to mine a specified minimum amount of coal each year. The specified minimum delivery commitment was calculated in such a manner so as to enable the co-owners of the programs to pay off their note obligations to Olentangy. In the event that it should default in its minimum delivery commitments, Big Sandy Creek agreed to pay liquidated damages to the programs in an amount that would be sufficient to enable the co-owners of the programs to discharge their note obligations to Olentangy. Big Sandy Creek retained the sole election and discretion to pay liquidated damages either in cash or in notes payable to Olentangy. *112 Olentangy agreed to acceptfrom the co-owners of the programs, without recourse, any notes received by the co-owners from Big Sandy Creek and to apply such notes as credits against the co-owners' obligations to pay off their nonrecourse notes to Olentangy. Petitioners, relying on section 1.612-3(b)(3), Income Tax Regs., contend that the royalties paid in 1977 are deductible in that year as a matter of law. The regulation provides that, as a general rule, advanced royalties may be deducted only in the year that the mineral product, in respect of which the advanced royalties were paid or accrued, is sold. However, the regulation recognizes an exception in the case of advanced royalties paid or accrued "as a result of a minimum royalty provision." Under the exception, advanced minimum royalties may, at the option of the payor, be deducted in the year that they are paid or accrued. A "minimum royalty provision" is defined in section 1.612-3(b)(3), Income Tax Regs, as follows: [A] minimum royalty provision requires that a substantially uniform amount of royalties be paid at least annually either over the life of the lease or for a period of at least 20 years, in the *113 absence of mineral production requiring payment of aggregate royalties in a greater amount. * * * [Emphasis added.] In Maddrix v. Commissioner,supra, we concluded that the provisions in the private placement memorandum offering working interests in Investors Mining Program 77-2, the provisions in the subleaseagreement between Olentangy and co-owners of Investors Mining Program 77-2, and the terms of the nonrecourse notes executed by co-owners of that program reflected an intention that the notes be satisfied out of coal sales proceeds. Such being the case, we further concluded that petitioner's execution of the nonrecourse note, payments on which were contingent on coal sales proceeds, did not establish an enforceable requirement that substantially uniform minimum royalties be paid annually in any event, regardless of annual production. Following our decision in Wing v. Commissioner,81 T.C. 17 (1983), we stated that the contingent nature of the note was inherently inconsistent with the regulatory definition of a minimum royalty provision. The petitioners herein argue as did the petitioner in Maddrix v. Commissioner,supra, that *114 the provision in the mining services contracts calling for the payment by Big Sandy Creek of liquidated damages eliminates the otherwise contingent nature of petitioners' notes. They argue, in other words, that substantially uniform royalties of $300,000 would be paid each year by the programs, either as a result of actual mining or, in the absence of mining, by the application of Big Sandy Creek's liquidated damages to the amortization of the notes. In Maddrix v. Commissioner,supra, we rejected the foregoing argument. We stated that the agreement by Big Sandy Creek to pay liquidated damages to Investors Mining Program 77-2, although contemplated as a mechanism by which to amortize the notes executed by the co-owners of the program, did not have the legal operative effect of guaranteeing payments under the notes. In addition, we noted that under certain circumstances spelled out in the mining services contracts, either Investors Mining Program 77-2 or Big Sandy Creek could terminate the contract and thereby eliminate any further obligations of Big Sandy Creek to pay liquidated damages. Furthermore, we believed that the close affiliation between Olentangy and *115 Big Sandy Creek, the limited financial resources of the latter corporation, and the contemplated method of paying the liquidated damages prevented the petitioner in Maddrix from relying on the provision for liquidated damages to establish the requisite enforceable requirement that minimum royalties be paid. We found it highly unlikely under the circumstances that any notes executed by Big Sandy Creek and applied as credits against the petitioner's obligation to pay the purported royalties would actually be enforced. We stated that, at any rate, under the circumstances presented, the provision for liquidated damages fell far short of establishing an enforceable requirement to pay a substantially uniform amount of royalties at least annually over the life of the lease. In view of our conclusion in Maddrix as outlined above, we will deny petitioners' motion that we grant partial summary, judgment in their favor on the issue of whether the purported advanced royalties constituted "advanced minimum royalties." Based on our decision in Maddrix involving Investors Mining Program 77-2 and petitioners' representation that Investors Mining Program 77-3 operated in *116 the same manner as Investors Mining Program 77-2, it appears that partial summary judgment indeed may be the appropriate means by which to dispose of the issue presented herein, and the Court would be willing to entertain any such motion that might be forthcoming from respondent. An appropriate order will be entered.
Footnotes
1. Cases of the following petitioners are consolidated herewith: John A. Bolt and Edna Bolt, docket No. 17812-80; Roger O. Bouchard and Jerry Ann Bouchard, docket No. 17813-80; Amos E. Duinick and June E. Duinick, docket No. 17814-80; Robert L. Pickett, Jr. and Virginia K. Pickett, docket No. 17818-80; Albert L. Stephens, Jr., docket No. 17820-80; Ophelia G. Walsingham, docket No. 17821-80; Gerald J. Yegge and Tina G. Yegge, docket No. 17823-80; Charles J. Graham and Helen G. Graham, docket No. 21229-80; Merlin H. Willey and Edith H. Willey, docket No. 21230-80; Robert H. Tuck and Phyllis B. Tuck, docket No. 12537-81; John P. Hamilton and Phyllis A. Hamilton, docket No. 12538-81; Thomas V. Cooper and Constance S. Cooper, docket No. 12539-81; Robert Davis and Faye Davis, docket No. 12540-81; Jon D. Hakman and Pamela Hakman, docket No. 14401-81; Thomas C. Barnes, docket No. 15270-81; Thomas C. Barnes and Cindi S. Barnes, docket No. 15272-81; and M. Khaled El-Yousef and Nadia El-Yousef, docket No. 15837-81.↩
2. Petitioners' motion is actually styled as a "Motion for Summary Judgment." However, the motion does not address numerous issues raised in the statutory notice. In a memorandum to this Court, petitioners acknowledged that their motion is the equivalent of a motion for partial summary judgment, and we have treated the motion accordingly. ↩
3. The use of the word "paid" herein is for convenience only and is not intended to represent any conclusion concerning the true nature of the transaction at issue.↩
4. Investors Mining Programs 77-2 and 77-3 were two of five programs, known as Investors Mining Programs 77-1 through 77-5. Petitioners state in their motion that they were owners of undivided working interests in Investors Mining Programs 77-2, 77-3, and 77-4. However, there is no reference to Investors Mining Program 77-4 in any of the statutory notices issued to petitioners or in any of petitioners' petitions. ↩
5. Although not specifically stated, each of petitioners apparently elected to be taxed on the accrual method of accounting with respect to his proportionate share of items of income, gain, loss, deductions, and credits arising from his investment in the programs.↩